### THE BRATSBERG.

### THE SOUTHWARK.

#### (District Court, E. D. Pennsylvania. February 18, 1904.)

#### No. 7.

1. COLLISION—COST OF REPAIRS—EVIDENCE.

The cost of repairs for damage by collision is proved prima facie by testimony that the repairs were rendered necessary by reason of the collision, that they were made, and at the lowest price, and the testimony of the ship's agents that they had paid the bills.

2. SAME—DAMAGES RECOVERABLE—SURVEY AND DOCKING CHARGES.

Where repairs made necessary by collision and other repairs are made at the same time, the cost of the survey and docking charges will be divided.

In Admiralty. Suit for collision. On exceptions to report of commissioner.

Henry R. Edmunds, for libelant.
Horace L. Cheyney, for respondent.

J. B. McPHERSON, District Judge. The solution of the dispute in this case concerning the cause of the steamship's injury was so likely to be affected by the testimony concerning the character and extent of the injury itself, that the whole matter was referred to a commissioner by agreement, in order that he might determine both the cause of the injury, and what amount, if any, the libelant might be entitled to recover. His report, which is now before me upon exceptions, is a very satisfactory presentation of the facts as he has found them from the conflicting evidence. Upon the main point in controversy I agree that his finding is in accord with the more probable view of the matter, and that much of the injury from which the steamship was found to be suffering was caused by stranding upon the rocky bottom near the wharf from which the tug was engaged in taking her away. This being so, the testimony leaves no doubt about the negligence of the tug or about the innocence of the steamship. The full liability of the tug being thus established, the cost of the re-

pairs is to be ascertained by evidence of the usual kind. The method of proving the cost of the repairs that were done at Philadelphia is not objected to, but part of the damage was repaired at Liverpool,. and one of the objections to the commissioner's report is that he did not require the production of competent evidence in order to prove the cost of the work that was done at that port. In the reception of evidence on this point the commissioner states that he followed the practice that has prevailed in this district for more than 20 years, and an examination of the record shows the correctness of his statement. Since the case of The Rebecca v. The America, Fed. Cas. No. 11,619a, it has been held in this district that the cost of repairs is proved prima facie by testimony that "the repairs were rendered necessary by reason of the collision, that they were made, and at the lowest price, and the testimony of the ship's agents that they had paid the bills." In the report of the case on appeal to the Circuit Court (4 Fed. 337) the facts are there stated to be, that the master testified before the commissioner concerning the aggregate cost of the repairs, and that the owner's agent then testified that he had paid the bills that made up this aggregate, and produced the receipted accounts approved by the master, although the agent admitted that he had no personal knowledge that the repairs had been made. Another statement of the facts is to be found in the commissioner's original report, on file in the clerk's office, in the following language:

"The master testifies what damage was done, and what was the cost of the necessary repairs. He also testifies as to several other items of claim, and he distinctly establishes the fact that the repairs were actually made, and that the services were actually rendered. Both he and Mr. Gardeicke testify as to the care exercised in securing the repairs at the lowest possible price, and the charges for the greater part of the other items are regulated by the custom of the port. When, in addition, it is shown that the bills rendered were approved by the master, that they were actually paid by the agents of the Rebecca, and on her account, it seems to the commissioner to be satisfactorily established in the first instance that such items constitute proper charges in this case."

It should also be noted that an examination of the depositions shows that a survey had been made, the report of which was no doubt before the commissioner.

The evidence had been objected to as "secondary, when it ought to have been primary," and it was insisted by the respondent's proctor "that the proper parties to make proof of these facts were the persons who had made the repairs and rendered the services, and who had received payment for them." He refused to offer any testimony, and, as already stated, the commissioner (Hon. Wayne MacVeagh) ruled that a prima facie case had been made out. His ruling was sustained by Judge Butler, and also by Judge McKennan, before whom the case was heard on appeal to the circuit court. Judge Butler's opinion on this point is as follows:

"It must not be overlooked that the only question raised by the exceptions is whether the libelant has presented a prima facie case. As respects the repairs, I can see no room to doubt that he has. The testimony is direct, positive, and sufficiently certain. While more might have been produced, it was quite sufficient until answered."

Judge McKennan said:

"But it is contended that these claims were allowed upon insufficient or improper evidence. Payments were rendered to persons who rendered bills for repairs made upon the Rebecca, which were certified by the master, who superintended the work, by the agent of the libelant. This was primary proof of the expenditure, of its purpose and its necessity. and, unless answered by counter proof, was altogether sufficient to justify the allowance of such payments."

The testimony in the present case was at least as strong as in The America. As to some of the bills it was even stronger, for these had also been approved by the libelant's underwriters, who settled their liability on this basis, and the correctness of these bills is therefore even more probable than if the master's approval stood alone. Upon pages 95 and 96 of Coote on Admiralty Practice the method of proving the cost of repairs is thus referred to:

"In cases of damage the registrar and merchants are entitled to have laid before them the ship's protest and the survey, in addition to the various vouchers for the repairs.

"A comparison of the vouchers with the protest and the survey will in ordinary cases afford the needful test whether the repairs charged are no more than what the actual damage itself warranted; for such a comparison must lead to the certain detection of any attempt on the part of the shipowner to take advantage of his injury, and to make a new ship out of an old one by launching out into excessive and exorbitant reparation incompatible with the statements of the protest and the recommendations of the survey. If, however, the owners of a damaged vessel merely avail themselves of the occasion to effect an additional reparation, without the intention of charging the other side with it, no exception will be taken either by the court or others.

"In addition to the protest and survey, and the silent testimony of bills and receipts, it is competent to the plaintiff to produce other evidence; e. g., the testimony of persons who saw the ship and the damage done to her before the repairs were commenced, and who were capable, from practical experience in shipping matters, of estimating the extent of the repairs rendered necessary by the collision, and what would be the expense of effecting them. * * * Where a vessel has been damaged, the plaintiff discharges the onus of proof which lies upon himself by bringing in the protest, survey, and vouchers for all his payments. and such evidence is prima facie sufficient. * * * It would appear that, whatever the question be, the vouchers are never required to be verified by the affidavits of the various tradesmen and handicraftsmen from whom they have emanated. By the practice of the registrar and merchants they would appear to prove themselves."

There can be no doubt that the protest, if there be a protest, and especially the survey, are quite as important items of the proof as the vouchers themselves. But I do not think it was essential to produce the Liverpool survey of the hull in the present case, since the survey made at Philadelphia immediately after the stranding was in evidence, and there was no suggestion that the ship had been injured afterwards. There was evidence enough to shift the burden of proof upon the respondent.

But I think that the cost of the survey and the docking charges ought to have been divided. Other repairs, not made necessary by the stranding, were made at the same time, and the English rule, which divides the charges under such circumstances, seems to be fair and equitable (Marine Ins. Co. v. China Steamship Co., 6 Aspinall, Maritime Cases, 68; s. c. 11 Appeals Cases, 574; and Ruabon v.

London Assurance Co., 8 Aspinall, Maritime Cases, 346); and it was followed in this district in the unreported case of The Atlas v. Le Lion, No. 77 of 1895.

A decree in favor of the libelant, with interest and costs, may be entered in accordance with this opinion.